**ELECTRONIC DATA SYSTEMS COR-PORATION, Petitioner–Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.**

No. 90–4251.

United States Court of Appeals, Fifth Circuit.

July 29, 1991.

---

Andrew C. Meyer and Barton A. Bixenstine, Duvin, Cahn & Barnard, Cleveland, Ohio, and Martin T. Wymer, Deputy Gen. Counsel, Detroit Legal Affairs, Southfield, Mich., for petitioner-cross-respondent.

Fred L. Cornell, Jr., Aileen A. Armstrong and Judith A. Dowd, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent-cross-petitioner.

Robert H. Miller, Regional Director, N.L.R.B., Region 20, San Francisco, Cal., for other interested party.

Before HENLEY,* KING and GARWOOD, Circuit Judges.

KING, Circuit Judge:

Electronic Data Systems Corporation (EDS) petitions this court to deny enforcement of an order of the National Labor Relations Board (Board or NLRB) entered on March 21, 1990. The NLRB's order directed EDS to bargain with Local No. 150, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO (Union) in a bargaining unit composed of members of the workforce of EDS's Medi–Cal operation in Rancho Cordova, California. Finding no basis to reverse the Board, we enforce its March 21, 1990 order.

## I.

EDS, a computer services and telecommunications company which provides data processing and related services, is under contract with the State of California to maintain an integrated computer services operation supporting California's Medi–Cal health care program. On December 8, 1988, the Union filed a representation petition seeking certification as the exclusive bargaining representative of the EDS employees at EDS's facility on Sunrise Park Drive (Sunrise facility) in Rancho Cordova, California. On December 19, the Union filed an amended petition. A hearing was

* Circuit Judge of the Eighth Circuit, sitting by designation.

held before an NLRB hearing officer to determine whether the petitioned-for unit was an appropriate unit for purposes of collective bargaining. At the hearing EDS took the position that the only appropriate unit consisted of the approximately 500 employees located at its two Medi–Cal facilities in Rancho Cordova—the Sunrise facility and another 1¼ miles away on Prospect Park Drive (Prospect facility). On July 31, 1989, the NLRB's Regional Director issued a "Decision and Direction of Election," finding that the employees at the Sunrise facility constituted an appropriate bargaining unit. EDS filed with the Board a timely request for review of the Regional Director's findings, and the Union filed an opposition to the request for review. On August 29, the Board denied EDS's request for review.

On September 7, after an election supervised by the NLRB, the NLRB's Regional Director certified the Union as the exclusive bargaining representative of the employees at EDS's Sunrise facility. On September 10, 1989, the Union requested that EDS commence bargaining, and since September 13, EDS has refused to bargain with the Union. On September 21, the Union filed an unfair labor practice charge with the NLRB, and on October 30, the NLRB's General Counsel issued a complaint alleging that EDS's refusal to bargain violated § 8(a)(5) and (1) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(5) and (1). On November 6, EDS filed an answer to the complaint in which it admitted its refusal to bargain, but denied that the unit was appropriate and that it had violated the Act.

On December 4, 1989, the General Counsel filed a motion for summary judgment with the Board. On December 13, the Board issued an order transferring the proceeding to itself and a notice directing EDS to show cause why the motion should not be granted. On January 16, 1990, EDS filed a response to the notice to show cause and a cross-motion for summary judgment, contending that the NLRB had improperly certified the Union as the representative of employees in a unit that was not appropriate for collective bargaining.

On March 21, 1990, the Board issued a decision and order granting the General Counsel's motion for summary judgment. The Board found that all issues raised by EDS were or could have been litigated in the prior representation proceeding and that EDS did not offer to adduce at a hearing any newly discovered and previously unavailable evidence and did not allege any special circumstances that would require the NLRB to reexamine its decision in the representation proceeding. Accordingly, the Board found that EDS had violated § 8(a)(5) and (1) of the Act by refusing to bargain with the Union.

The Board's order requires EDS to cease and desist from the unfair labor practice found and from in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them in § 7 of the Act. Affirmatively, the NLRB's order requires EDS to bargain with the Union on request and to post an appropriate notice. EDS petitions this court to deny enforcement of this order.

## II.

EDS contends that the Board erred in determining that a unit restricted to the 40 employees at the Sunrise facility was an appropriate bargaining unit. EDS argues that the geographic proximity, operational integration, and centralized control of labor policy of the Sunrise facility with the Prospect facility preclude the Sunrise facility from having a separate identity. EDS asserts that the Board was wrong in automatically relying on the "single plant presumption" and supports this argument by citation to this circuit's opinion in *NLRB v. Purnell's Pride, Inc.*, 609 F.2d 1153, 1156 (5th Cir.1980).

This court's review of the Board's determination of an appropriate bargaining unit is "exceedingly narrow." *NLRB v. Southern Metal Serv.*, 606 F.2d 512, 514 (5th Cir.1979). The Board's decision "involves of necessity a large measure of informed discretion" and "is rarely to be disturbed." *Packard Motor Car Co. v.*

*NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947). As this court has stated, review of this decision is "limited to determining whether the decision is arbitrary, capricious, an abuse of discretion, or lacking in evidentiary support." *NLRB v. J.C. Penney Co., Inc.*, 559 F.2d 373, 375 (5th Cir.1977). "It is the duty of the [Board] to select an appropriate unit; it need not delimit the *most* appropriate unit." *Purnell's Pride*, 609 F.2d at 1155. An employer who challenges the Board's determination has the burden of establishing "that the designated unit is clearly not appropriate." *Id.* at 1155–56.

■ In deciding whether a group of employees is an appropriate bargaining unit, this court has adopted a "community of interests" analysis. *Id.* at 1156; *J.C. Penney Co., Inc.*, 559 F.2d at 375. Factors used to determine a "community of interests" include "bargaining history, operational integration, geographic proximity, common supervisor, similarity in job function, and employee interchange." *Id.* In assessing the employees' community of interests, "[t]he Board must consider the entire factual situation, and its discretion is not limited by a requirement that its judgment be supported by all, or even most, of the potentially relevant factors." *NLRB v. DMR Corp.*, 795 F.2d 472, 475 (5th Cir. 1986) (quoting *International Association of Machinists and Aerospace Workers v. NLRB*, 759 F.2d 1477, 1480 (9th Cir.1985)).[1]

■ With this standard in mind, we review the facts of this challenge. The bargaining unit approved by the Board includes "[a]ll full-time and regular part-time data control clerks, printing press operators, shippers and receiving clerks and word processors (publications group)" employed by EDS at the Sunrise facility. The approximately forty-two employees at the Sunrise facility produce and distribute man-

uals, bulletins, and claim forms used by health care providers who participate in the Medi–Cal program. These employees print, copy, collate, bind, store, and mail large volumes of these documents. The 460 employees at the Prospect facility, 1¼ miles away, also work on the Medi–Cal account. These employees, however, perform the technical functions necessary to process the Medi–Cal claims. The functions at the Prospect facility include routing the claims, filming them on microfilm, entering claims data in the EDS computer, and analyzing and resolving errors on the claims. In addition, employees at the Prospect facility communicate with Medi–Cal providers and assist them in resolving problems, implement state-imposed changes to the Medi–Cal system, and monitor the efficiency of EDS's operations. The parties stipulated that all of EDS's hourly employees share identical benefits and that certain personnel policies are the same at both facilities.

EDS argues that the close operational integration of the two facilities and the geographic proximity weigh strongly in favor of treating the two facilities as a single unit. EDS alleges that it originally planned to house all operations at a single facility. EDS claims that there is broad interdependency and interaction between the facilities in their common goal of supporting the Medi–Cal system. EDS notes that employees at the Prospect facility perform almost every work activity performed at the Sunrise facility including handling and sorting mail, operating a pallet jack, word-processing, and operating microfilm equipment.

EDS also claims that the employees at the Sunrise facility are supervised by persons at the Prospect facility and that common labor policies are administered for both facilities by the central personnel of-

---

1. As this court has stated,
   The choice of a very large unit with a diversified constituency increases the possibility that there will be conflicts of interest that will undercut the union's ability to represent all unit members effectively. On the other hand, the designation of a small unit that excludes employees with common skills, attitudes, and

economic interests may necessarily curtail the union's bargaining power and may generate destructive factionalization and in-fighting among employees.
*Purnell's Pride*, 609 F.2d at 1156 (quoting R. Gorman, Basic Text on Labor Law 68–69 (1976)).

fice at the Prospect facility. EDS argues that there is no local managerial authority at the Sunrise facility that could support collective bargaining, although managers at Sunrise have "some authority with respect to hiring, firing and discipline." EDS fears that "[b]ecause of the close operational integrity of the two facilities and their overlapping job functions, no package of wages, hours and working conditions can be applied to Sunrise Park employees without applying much of the employment package to Prospect Park." Thus, EDS argues, the 40 employees at the Sunrise facility may effectively control labor relations over the 460 employees at the Prospect facility, and may be able to shut down the entire integrated operation through a strike.[2]

The NLRB counters that its unit determination is supported by ample evidence that employees at the two facilities perform fundamentally distinct functions. The NLRB argues that employees at the Sunrise facility perform "production" work in a "printshop/warehouse environment" in a "large open area," while Prospect facility employees perform "claims processing and technical functions in [an] office environment." The NLRB points to differences in equipment, training, and the physical labor performed at each facility. The NLRB notes that most transfers occur within each facility rather than between facilities and that employees in each facility are cross-trained to perform other functions only within their respective facilities. In addition, the NLRB found that there is only sporadic daily contact between the facilities and that Sunrise managers have extensive authority over the working conditions of their employees. Sunrise managers have the authority to hire, discipline, and fire employees; schedule work assignments and projects; have the authority to grant overtime and time off; can approve transfers within the Sunrise facility; and conduct individual employee evaluations. Thus, the NLRB argues that its unit determination was well within its statutory discretion.

EDS cites our *Davis Cafeteria* case in support of its position. *See NLRB v. Davis Cafeteria, Inc.*, 396 F.2d 18 (5th Cir.1968). In *Davis Cafeteria*, we held that the Board failed to justify the inclusion of two of eight cafeterias in Miami, Florida in a bargaining unit, while excluding the other six. This court held that the fact that a local manager has authority to hire and fire employees alone does not make an individual location an appropriate bargaining unit. *Id.* at 20. Thus, the present case is more analogous to our decision in *NLRB v. J.M. Wood Manuf. Co.*, 466 F.2d 201 (5th Cir. 1972), *cert. denied*, 410 U.S. 931, 93 S.Ct. 1372, 35 L.Ed.2d 593 (1973). In *J.M. Wood*, this court considered the multitude of factors which were later incorporated into the "community of interests" analysis and determined that the character of the operation at one plant justified its determination as an appropriate bargaining unit. *Id.* at 202–03. Although there is evidence to support each side's contentions and the unit composition argued for by EDS may have also been "an appropriate bargaining unit," we cannot say that the one approved by the NLRB was "clearly not appropriate" based on the employee's "community of interests." *Purnell's Pride*, 609 F.2d at 1156.[3]

---

**2.** This level of operational integration was not demonstrated by the record or in the regional director's report.

**3.** EDS argues that the regional director's decision was based on the "single plant presumption," and thus must be reversed based on this court's precedent. *NLRB v. Purnell's Pride, Inc.*, 609 F.2d 1153, 1160–61 & nn. 4 & 5 (5th Cir. 1980) (single plant unit presumption is "almost useless in practice" and "does nothing but confuse the inquiry"). We note that at least five other circuits recognize this rebuttable presumption as valid. *NLRB v. Aaron's Office Furniture Co., Inc.*, 825 F.2d 1167, 1169 (7th Cir.

1987); *NLRB v. Child World, Inc.*, 817 F.2d 1251, 1253 (6th Cir.1987); *NLRB v. Living and Learning Centers, Inc.*, 652 F.2d 209, 212 (1st Cir.1981). *Spring City Knitting Co. v. NLRB*, 647 F.2d 1011, 1014 (9th Cir.1981); *NLRB v. Western & Southern Life Ins. Co.*, 391 F.2d 119, 123 (3d Cir.), *cert. denied*, 393 U.S. 978, 89 S.Ct. 445, 21 L.Ed.2d 439 (1968). We need not address EDS's argument, however, because it is clear that the Board would have rendered the same decision absent its reference to the "single plant presumption." The regional director extensively considered all of the relevant facts regarding the bargaining unit in her analysis.

### III.

Based on the foregoing, we enforce the Board's order.

ENFORCED.