# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60022

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2016

Lyle W. Cayce
Clerk

MACY'S, INCORPORATED,

Petitioner Cross-Respondent

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent Cross-Petitioner

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board

Before BENAVIDES, DENNIS, and COSTA, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

The National Labor Relations Board (NLRB or the Board) certified a collective-bargaining unit consisting of all cosmetics and fragrances employees at the Saugus, Massachusetts, Macy's department store. After Macy's refused to bargain with Local 1445, United Food and Commercial Workers Union (the Union), which was certified as the unit's bargaining representative, the Board filed an unfair labor practices order. Macy's filed a petition for review with this court, contending that (1) the Board applied a legal standard that violated the National Labor Relations Act (NLRA or the Act) and otherwise committed an abuse of discretion; and (2) under the proper legal standard as well as the

## No. 15-60022

incorrect legal standard upon which the Board relied, all selling employees must be included in the petitioned-for unit.[1]  The Board filed a cross-application for enforcement of its order.  Because the Board did not violate the NLRA or abuse its discretion in certifying the unit of cosmetics and fragrances employees, we DENY the petition for review and GRANT the Board's cross-petition for enforcement of its order.

### I.

### A.

Macy's operates a national chain of department stores, including one in Saugus, Massachusetts.  The Saugus store is divided into eleven primary sales departments: juniors, ready-to-wear, women's shoes, handbags, furniture (also known as big ticket), home (also referred to as housewares), men's clothing, bridal, fine jewelry, fashion jewelry, and cosmetics and fragrances.  The petitioned-for unit includes all full-time, part-time, and on-call employees employed in the Saugus store's cosmetics and fragrances department, including counter managers, beauty advisors, and all selling employees in cosmetics, women's fragrances, and men's fragrances.

The cosmetics and fragrances department is located in two areas within the Saugus store, on the first and second floors; the two areas are connected by a bank of elevators.  Each of the two selling areas is spatially distinct from the other primary sales departments.  Cosmetics beauty advisors are specifically assigned to one of eight counters in the first floor cosmetics area, each of which is dedicated to selling products from one of eight primary cosmetics vendors.  Cosmetics beauty advisors typically sell only one vendor's products, which they

---

[1] Although the underlying conduct occurred within the First Circuit, this court has jurisdiction because Section 10(f) of the NLRA allows review of Board decisions not only in the Circuit in which the unfair labor practice was alleged to have occurred, but also in the Circuit in which the person aggrieved by the Board's order "resides or transacts business." 29 U.S.C. § 160(f).

No. 15-60022

also use to give customers makeovers. Fragrances beauty advisors are assigned to either the men's or the women's fragrances counter, and they sell all available men's or women's products, regardless of the vendor. Cosmetics and fragrances beauty advisors keep lists of their regular customers, which they use to invite customers to product launches or to book appointments to give customers makeovers. Although cosmetics and fragrances employees occasionally assist other departments with inventory, the record is clear that cosmetics and fragrances employees are never asked to sell in other departments, nor are other selling employees asked to sell in the cosmetics and fragrances department.

Six of the eight cosmetics counters, the women's fragrances counter, and the men's fragrances counter each have a counter manager who, in addition to selling products, helps organize promotional events, monitors the counter's stock, coaches beauty advisors on customer service and selling technique, ensures that the counter is properly covered by beauty advisors, and schedules visits by vendor employees, such as sprayers and makeup artists. Finally, the department has seven on-call employees who, unlike the beauty advisors, may work at any of the ten counters. There is no indication that any other primary sales department has the equivalent of counter managers, and the record is unclear as to whether the other primary sales departments have the equivalent of on-call employees.

Outside of the cosmetics and fragrances department the Saugus store has approximately thirty non-selling employees (a receiving team, a merchandising team, and staffing employees) and eighty selling employees organized within the other ten primary sales departments. Most, but not all, of the other departments have their own sales manager, and at least some of them are divided into sub-departments. Certain other primary sales departments have specialist sales employees who, like the cosmetics beauty

3

No. 15-60022

advisors, specialize in selling a particular vendor's products; in those departments, vendor representatives monitor stock and train selling employees on selling technique and product knowledge.

Cosmetics and fragrances employees and other selling employees have some incidental contact: cosmetics and fragrances employees occasionally assist in storewide inventory, and all employees whose shifts correspond with the store's opening attend brief daily "rallies" at which management reviews the previous day's sales figures and any in-store events that are taking place that day. In addition, all selling employees work shifts during the same time periods, use the same entrance, have the same clocking system, and use the same break room. However, the record contains little evidence of temporary interchange between cosmetics and fragrances employees and other selling employees.

Although compensation differs, all selling employees enjoy the same benefits, are subject to the same employee handbook, and have access to the same in-store dispute resolution program. All selling employees are evaluated based on the same criteria. Finally, all selling employees are coached through the same program designed to improve selling techniques and product knowledge.

## B.

In October 2012, the Union filed a petition with the Board seeking a representation election among all cosmetics and fragrances employees at the Saugus store. In November 2012, the Board's Acting Regional Director (ARD) issued a Decision and Direction of Election in which he found that a petitioned-for bargaining unit of cosmetics and fragrances employees, including counter managers, employed by Macy's at its Saugus store was appropriate. Thereafter, Macy's filed a timely request for review. Macy's contended that the smallest appropriate unit must include all employees at the Saugus store

4

No. 15-60022

or, in the alternative, all selling employees at the store.  The Union filed an opposition. In December 2012, the Board granted the Employer's request for review.

In making a determination as to the appropriateness of the bargaining unit, the Board applied the "overwhelming community of interest" test set forth in *Specialty Healthcare and Rehabilitation Center of Mobile*, 357 NLRB No. 83, 2011 WL 3916077 (2011), *enforced sub nom. Kindred Nursing Centers East, LLC v. NLRB*, 727 F.3d 552 (6th Cir. 2013).  The Board determined that the cosmetics and fragrances employees share a community of interest, finding that all of the petitioned-for employees: work in the same department and in the same two connected, distinct work areas; have common, separate supervision; work with a shared distinct purpose and functional integration; have little contact with other selling employees; and are paid on the same basis, receive the same benefits, and are subject to the same employer policies.

The Board then addressed Macy's contention that the smallest appropriate unit must include a wall-to-wall unit of all Saugus store employees, or, alternatively, all selling employees at the store.  The Board explained that *Specialty Healthcare* requires an employer to demonstrate that the excluded employees share an "overwhelming community of interest" with the employees in the petitioned-for unit, such that their community of interest factors "overlap almost completely."  While acknowledging that the petitioned-for unit shared some factors with certain other selling employees, the Board concluded that a storewide unit was not required.

Finally, the Board addressed Macy's contention that *Specialty Healthcare* deviated from a line of precedent holding that a storewide unit is "presumptively appropriate" within the retail industry.  After considering the relevant precedent, the Board concluded that it has, "over time, developed and applied a standard that allows a less-than-storewide unit so long as that unit

5

No. 15-60022

is identifiable, the unit employees share a community of interest, and those employees are sufficiently distinct from other store employees." It therefore found that the petitioned-for unit was appropriate under Board precedent even without reference to *Specialty Healthcare*.

After Macy's refused to bargain with the Union, the Board filed an unfair labor practices order. Macy's petitioned for review, arguing that the unit sanctioned by the Board was clearly not appropriate, that the Board applied a test that cannot be squared with the NLRA or prior Board precedent governing initial unit determinations, and that, even under *Specialty Healthcare*, the Board approved an inappropriate unit. The Board cross-applied for enforcement of its order.

II.

Under Section 10(e) of the NLRA, which governs petitions for enforcement of Board orders, the Board's factual findings are conclusive if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). Section 10(f), which governs petitions for review of Board orders, contains the same standard of review for factual findings. 29 U.S.C. § 160(f). As for questions of law, the Supreme Court has repeatedly held that "the NLRB has the primary responsibility for developing and applying national labor policy" and that the Board's rules should therefore be accorded "considerable deference." *NLRB v. Curtin Matheson Scien., Inc.*, 494 U.S. 775, 786 (1990).

"This court's review of the Board's determination of an appropriate bargaining unit is exceedingly narrow." *Elec. Data Sys. Corp. v. NLRB*, 938 F.2d 570, 572 (5th Cir. 1991) (quoting *NLRB v. S. Metal Serv.*, 606 F.2d 512, 514 (5th Cir. 1979) (internal quotation marks omitted)). This court therefore reviews unit determinations only to determine "whether the decision is arbitrary, capricious, an abuse of discretion, or lacking in evidentiary support."

No. 15-60022

*Id.* at 573. An employer who challenges the Board's determination has the burden of establishing "that the designated unit is clearly not appropriate." *Id.* at 574 (quoting *NLRB v. Purnell's Pride, Inc.*, 609 F.2d 1153, 1155-56 (5th Cir. 1980)).

III.

Section 9(a) of the NLRA provides that a union will be the exclusive bargaining representative if chosen "by the majority of the employees in a unit appropriate for" collective bargaining. 29 U.S.C. § 159(a). Section 9(b) authorizes the Board to "decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by [the Act], the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." 29 U.S.C. § 159(b). The Act does not, however, tell the Board how to determine whether a bargaining unit is appropriate.

In making its determination, the Board has traditionally looks at the "community of interest" of the employees involved. *Elec. Data Sys.*, 938 F.2d at 573. As this court has explained:

> Whether employees have a community of interests is determined by looking at such factors as: similarity in the scale and manner of determining earnings; similarity in employment benefits, hours of work and other terms and conditions of employment; similarity in the kind of work performed; similarity in the qualifications, skills and training of employees; frequency of contact or interchange among employees; geographic proximity; continuity or integration of production processes; common supervision and determination of labor-relations policy; relationship to the administrative organization of the employer; history of collective bargaining; desires of the affected employees; and extent of union organization.

*NLRB v. Catalytic Indus. Maint. Co. (CIMCO)*, 964 F.2d 513, 518 (5th Cir. 1992). This court has made clear that "[t]hese factors have no independent significance." *Purnell's Pride*, 609 F.2d at 1156. Rather, in assessing the

7

employees' community of interests "[t]he Board must consider the entire factual situation, and its discretion is not limited by a requirement that its judgment be supported by all, or even most, of the potentially relevant factors." *Elec. Data Sys. Corp.*, 938 F.2d at 573 (quoting *NLRB v. DMR Corp.*, 795 F.2d 472, 475 (5th Cir. 1986)).   In addition, the Supreme Court has stated that "employees may seek to organize 'a unit' that is 'appropriate'—not necessarily the single most appropriate unit." *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610 (1991).   Applying this standard, this court has held that where there is evidence that an alternative unit "might also [be] an appropriate bargaining unit," the unit approved by the NLRB will nevertheless be enforced unless it was "clearly not appropriate." *Elec. Data Sys. Corp.*, 938 F.2d at 574 (quoting *Purnell's Pride*, 609 F.2d at 1156).

In *Specialty Healthcare*, the Board clarified the principles that apply in cases, such as this one, where a party contends that the smallest appropriate bargaining unit must include additional employees beyond those in the petitioned-for unit.   If the Board determines that the smaller unit is readily identifiable as a group—based on job classifications, departments, functions, work locations, skills, or similar factors—and the employees in the smaller unit share a community of interest according to the traditional criteria,

> the Board will find the petitioned-for unit to be an appropriate unit, despite a contention that employees in the unit could be placed in a larger unit which would also be appropriate or even more appropriate, unless the party so contending demonstrates that employees in the larger unit share an overwhelming community of interest with those in the petitioned-for unit.

*Specialty Healthcare*, 357 NLRB No. 83, at *17.   Even before the Board decided *Specialty Healthcare*, the D.C. Circuit had approved an "overwhelming community of interest standard, holding that "[i]f the employees in the proposed unit share a community of interest, then the unit is *prima facie* appropriate," and the employer bears the burden of showing that it is "truly

inappropriate." *Blue Man Vegas, LLC v. NLRB*, 529 F.3d 417, 421 (D.C. Cir. 2008). As the court explained, this burden is satisfied where there "is no legitimate basis upon which to exclude certain employees from [the proposed unit]." *Id.*; *accord Specialty Healthcare*, 357 NLRB No. 83, at \*16.

### A.

Macy's begins by arguing that the unit approved by the Board was clearly not appropriate because all sales employees at the Saugus store represent "a homogenous work force." Citing to *Amalgamated Clothing Workers*, 491 F.2d 595 (5th Cir. 1974), Macy's argues that a unit limited to cosmetics and fragrances employees is inappropriate because "there are no material distinctions among the sales employees in the Saugus store." In *Amalgamated Clothing Workers*, the Board had approved a unit of cutters, markers, and spreaders solely on the grounds that they were "highly skilled." *Id.* at 598. This court rejected the Board's unit determination because of "the complete lack of separate interests in any conditions of employment" that distinguished the petitioned-for unit from the rest of the employees. *Id.* at 598.

The Board's findings in this case, which are supported by substantial evidence, do not demonstrate a "complete lack of separate interests." In making its argument, Macy's simply ignores or contradicts the Board's explicit findings that illustrate the distinct interests of the cosmetics and fragrances employees. Contrary to Macy's claim that all employees "collaborate in the same integrated workplace," the Board found "little evidence of temporary interchange between the petitioned-for employees and other selling employees." *Macy's & Local 1445*, 361 NLRB No. 4, \*6 (July 22, 2014). Specifically, the Board found "no examples of (1) other selling employees actually assisting the cosmetics and fragrances department, (2) cosmetics and fragrances employees actually assisting other departments, or (3) a selling employee from one department picking up shifts in another department." *Id.*

And while Macy's asserts that "[e]xtensive training and coaching opportunities are available to all sales employees," the Board in fact found that much of the training was department-specific. *Id.* at \*4 ("[S]ales departments hold various seminars during the year that train employees in their departments in selling technique, product knowledge, and related topics."). Even Macy's assertion that all selling employees "perform the same basic job function of selling merchandise to customers" ignores the Board's finding that cosmetics and fragrances employees perform a unique function, that of "selling cosmetics and fragrances." *Id.* at \*10.

Macy's concedes that there are distinctions between the cosmetics and fragrances sales employees and the rest of the selling staff. It acknowledges that the department is organized as a separate department, supervised by a separate sales manager, and operated primarily in distinct areas of the store. But it asserts that the Board failed to explain why these distinctions outweigh the similarities between the petitioned-for employees and the other selling employees, and it argues that, under *Purnell's Pride*, this "lack of explanation is fatal to the Board's decision." In *Purnell's Pride*, the Regional Director had simply listed the factors that guided his unit determination. 609 F.2d at 1159-60. Finding that the Board, in upholding the Regional Director's ruling, had failed to adequately explain its weighing of the community interest factors, *see id.* at 1160, this court remanded the case to allow the Board to disclose the basis of its order, *id.* at 1162. Here, the Board satisfied *Purnell's Pride*'s requirements: the decision identified some factors that could weigh against the petitioned-for unit and explained—with citation to Board precedent—why these factors did not render the petitioned-for unit inappropriate. *Macy's & Local 1445*, 361 NLRB No. 4, \*11.

Finally, Macy's advances two policy-based arguments. First, it contends that the petitioned-for unit is inappropriate because its approval by the Board

will "wreak havoc in the retail industry" by disrupting employer operations and frustrating customer experience. Next, it contends that the certification of departmental units will undermine workers' rights. These arguments are unsuccessful. Macy's does not cite to any controlling authority for the proposition that the effect on an employer's business is a factor to be considered in unit determinations. And the Board's history of approving multiple units in the retail and other industries suggests that neither workers nor businesses will suffer grave consequences as a result of the Board's order. *See, e.g.*, *Teledyne Economic Dev. v. NLRB*, 108 F.3d 56, 57 (4th Cir. 1997) (enforcing Board's decision certifying two units at one employer, a Job Corps Center); *Banknote Corp. of Am., Inc. v. NLRB*, 84 F.3d 637, 647 (2d Cir. 1996) (enforcing Board order requiring employer to bargain with three different units at a printing facility); *Stern's Paramus*, 150 NLRB 799, 802-03, 806 (1965) (approving separate units of selling, non-selling, and restaurant employees at a department store; and observing that while the Board has regarded a storewide unit as the "basically appropriate" or "optimum" unit in retail establishments, it has approved "a variety" of less-than-storewide units representing various "occupational groupings" in department stores); *I. Magnin & Co.*, 119 NLRB at 643 (1957).

As we noted above, the Board may certify "'a unit' that is 'appropriate'— not necessarily the single most appropriate unit." *Am. Hosp. Ass'n*, 499 U.S. at 610. Although the unit composition argued for by Macy's may have also been "an appropriate bargaining unit," we cannot say that the one approved by the NLRB was "clearly not appropriate" based on the employees' "community of interests." *Elec. Data Sys. Corp.* 938 F.2d at 574 (quoting *Purnell's Pride*, 609 F.2d at 1156).

11

No. 15-60022

B.

Next, Macy's contends that the Board's "overwhelming community of interest" test cannot be squared with the NLRA or prior Board precedent governing initial unit determinations. We disagree.

As the Supreme Court has recognized, the Board has the authority to develop rules, whether through adjudication or by the exercise of its rulemaking authority, to guide its resolution of unit determinations. *Am. Hosp. Ass'n*, 499 U.S. at 611-12. As interpretations of the Act, such rules are subject to the principles of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* 467 U.S. 837, 843 (1984). *See NLRB v. UFCW, Local 23*, 484 U.S. 112, 123-24 (1987). Under *Chevron*, where "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.*, at 843. The courts must "respect the judgment of the agency empowered to apply the law 'to varying fact patterns,' even if the issue 'with nearly equal reason [might] be resolved one way rather than another.'" *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 398-99 (1996) (citation omitted). This court will not disturb the Board's reading of the Act if it is "reasonably defensible." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497 (1979).

Further, the Board has authority to depart from precedent and change its rules and standards as long as it "set[s] forth clearly the reasons for its new approach." *NLRB v. Sunnyland Packing Co.*, 557 F.2d 1157, 1160 (5th Cir. 1977). However, where the Board has not departed from a "uniform rule," the Board need not give a detailed rationale for its chosen approach. *See NLRB v. H. M. Patterson & Son, Inc.*, 636 F.2d 1014, 1017 (5th Cir. 1981).

We agree with our sister circuits that in *Specialty Healthcare* the Board "clarified—rather than overhauled—its unit-determination analysis." *Nestle Dreyer's Ice Cream Co. v. NLRB*, No. 14-2222, 2016 WL 1638039 (4th Cir. Apr.

12

26, 2016); *accord FedEx Freight, Inc. v. NLRB*, 816 F.3d 515, 525 (8th Cir. 2016) ("We conclude that the overwhelming community of interest standard articulated in *Specialty Healthcare* is not a material departure from past precedent."); *Kindred*, 727 F.3d at 561 ("The Board has used the overwhelming-community-of-interest standard before, so its adoption in *Specialty Healthcare* . . . is not new."); *Blue Man Vegas*, 529 F.3d at 421 (the Board's "consistent analytic framework" includes the question whether "the excluded employees share an overwhelming community of interest with the included employees").

In *Specialty Healthcare*, the Board laid out the "traditional standard" applicable when an employer contends that the smallest appropriate unit contains employees not in the petitioned-for unit. 357 NLRB No. 83, at *15. Citing its own precedent and decisions of the D.C. Circuit and the Seventh Circuit, the Board explained: "Given that the statute requires only an appropriate unit, once the Board has determined that employees in the proposed unit share a community of interest, it cannot be that the mere fact that they also share a community of interest with additional employees renders the smaller unit inappropriate." *Id.* (citing *Montgomery Ward & Co.*, 150 NLRB 598, 601 (1964); *Blue Man Vegas,* 529 F.3d at 421; *Dunbar Armored, Inc. v. NLRB*, 186 F.3d 844, 847 (7th Cir. 1999)). In such a situation, the Board determined that its precedent requires the proponent of the larger unit to demonstrate that all employees "share 'an overwhelming community of interest' such that there 'is no legitimate basis upon which to exclude certain employees from it.'" *Id.* at *16 (quoting *Blue Man Vegas*, 529 F.3d at 421). The Board acknowledged that it "has sometimes used different words to describe this standard and has sometimes decided cases such as this without articulating any clear standard," *id.* at 17, but an evaluation of the cited cases reveals that the newly-formulated standard was not a departure from Board precedent.

Macy's urges us to overrule *Specialty Healthcare* for several reasons. First, it asserts that the overwhelming community of interest test improperly affords controlling weight to the extent of union organization, in violation of Section 9(c)(5) of the NLRA. Second, it argues that the test departs from established Board precedent. Third, it contends that the test was improperly taken from the "accretion" context. Fourth, it claims that the Board violated the Administrative Procedure Act (APA) by promulgating the overwhelming community of interest test through adjudication rather than rulemaking. Finally, Macy's asserts that the test's application is particularly inappropriate in the retail context, where it "discard[s] decades of precedent favoring storewide bargaining units." Contending that the Board was able to find the unit of cosmetics and fragrances employees appropriate only by following *Specialty Healthcare*, Macy's argues that this court's invalidation of the overwhelming community of interest test—or its determination that the test is inapplicable in the retail context—would preclude enforcement of the Board's order. Each of these arguments is unavailing.

*1. The Overwhelming Community of Interest Test and Section 9(c)(5)*

Section 9(c)(5) of the Act provides that the Board, in making unit determinations, shall ensure that "the extent of organization shall not be controlling." 29 U.S.C. § 159(c)(5). The Supreme Court has construed this language to mean that "Congress intended to overrule Board decisions where the unit determined could *only* be supported on the basis of extent of organization," but that Congress did not preclude the Board from considering organization "as one factor" in making unit determinations. *NLRB v. Metro. Life Ins. Co.*, 380 U.S.438, 441-42 (1965).

Citing *NLRB v. Lundy Packing Co.*, 68 F.3d 1577 (4th Cir. 1995), Macy's argues that the Board's overwhelming community of interest test contravenes Section 9(c) by "accord[ing] controlling weight to the extent of union

organization" by making union-proposed units presumptively appropriate. However, the Fourth Circuit has expressly rejected this characterization of its holding in *Lundy*. *See Dreyer's*, 2016 WL 1638039. In *Lundy*, the Fourth Circuit rejected the Board's use of a standard under which "any union-proposed unit is *presumed appropriate* unless an 'overwhelming community of interest' exists between the excluded employees and the union-proposed unit." 68 F.3d at 1581 (emphasis added). In *Dreyer's*, the court explained:

> *Lundy* does not establish that the overwhelming-community-of-interest test as later applied in *Specialty Healthcare* fails to comport with the NLRA. Instead, *Lundy* prohibits the overwhelming-community-of-interest test where the Board first conducts a deficient community-of-interest analysis—that is, where the first step of the Specialty Healthcare test fails to guard against arbitrary exclusions.

2016 WL 1638039, at \*7. Where the Board "rigorously weigh[s] the traditional community-of-interest factors to ensure that the proposed unit was proper under the NLRA," the Court concluded, the "overwhelming community of interest" does not conflict with the Act. *Id.* at \*8. That is precisely what the Board did in the instant case. As a result, the test and its application do not violate Section 9(c).

### 2. The Board's Unit Determination Precedent

Macy's next argues that the *Specialty Healthcare* standard departs from established Board precedent. Macy's asserts that, contrary to Board precedent, the *Specialty Healthcare* analysis looks, "solely and in isolation," at "whether the employees in the unit sought have interests in common with one another." This argument is unconvincing. The community of interest test articulated in *Specialty Healthcare* and applied in this case was taken from the Board's 2002 decision in *United Operations* and was based on Board precedent going back to 1964. That test does not look only at the commonalities within the petitioned-for unit. Rather, it asks:

whether the employees are organized into a *separate department*; have *distinct* skills and training; have *distinct* job functions and perform *distinct* work, including inquiry into the amount and type of job overlap between classifications; are functionally integrated *with the Employer's other employees*; have frequent contact *with other employees*; interchange *with other employees*; have *distinct* terms and conditions of employment; and are *separately* supervised.

*Specialty Healthcare*, 357 NLRB No. 83, at *14 (emphasis added).  The Board's initial unit determination in *Specialty Healthcare* and in this case thus conformed to established precedent.  *See, e.g.*, *In re United Operations, Inc.*, 338 NLRB 123; *Bartlett Collins Co.*, 334 NLRB 484 (2001); *The Dahl Oil Co.*, 221 NLRB 1311 (1964).  The Board did not abuse its discretion by applying the traditional community of interest test in its initial unit determination.

*3.  "Overwhelming Community of Interest" in the Accretion Context*

An "accretion" is the addition of a small group of employees to an established bargaining unit without first holding an election.  Michael J. Frank, *Accretion Elections: Making Employee Choice Paramount*, 5 U. Pa. J. Lab. & Emp. L. 101, 102 (2002).  Because of accretion's "interference with the employees' freedom to choose their own bargaining agents," the Board does not apply the traditional community of interest test to determine whether the enlarged unit would be appropriate; rather, the Board generally finds that "[a] group of employees is properly accreted to an existing bargaining unit when they have such a close community of interests with the existing unit *that they have no true identity distinct from it*."  *DMR Corp.*, 795 F.2d at 476 (citation omitted) (emphasis in original).  While the structure and the underlying policy motivations of this standard resemble those of the *Specialty Healthcare* overwhelming community of interest test, Macy's contention that the latter was "improperly imported" from the accretion context fails to persuade us.  As an initial matter, as the Fourth Circuit observed in *Dreyer's*, "[it is not]

unreasonable . . . for the Board to use the same overwhelming-community-of-interest test in this context that it has historically used in the context of accretions." 2016 WL 1638039, at *9. Furthermore, the Board has applied the overwhelming community of interest test in the initial determination context since at least 1967, when, in *Jewish Hospital Association of Cincinnati*, it held that a unit limited to service employees was inappropriate because of their "overwhelming community of interest" with maintenance employees. 223 NLRB at 617. Macy's premise that the overwhelming community of interest test is inappropriate when applied in an initial unit determination thus falls, and its related contention that the test is therefore inappropriate necessarily fails.

### 4. The NLRB's Adjudicative Rulemaking Authority

In *NLRB v. Bell Aerospace Co. Div. of Textron, Inc.*, 416 U.S. 267, 294 (1974), the Supreme Court announced that "the Board is not precluded from announcing new principles in an adjudicative proceeding and that the choice between rulemaking and adjudication lies in the first instance within the Board's discretion." Yet Macy's contends that, because *Specialty Healthcare* announced "'policy-type rules or standards' to be applied in all future unit determination cases," the Board was required by the APA to resort to rulemaking and the decision should be set aside.

The Supreme Court has previously rejected a claim identical to that advanced by Macy's. In *SEC v. Chenery Corp.*, 332 U.S. 194 (1947), the respondent corporation argued that the Commission was required to resort to its rulemaking procedures if it desired to promulgate a new standard that would govern future conduct, rather than applying a general standard that it had formulated for the first time in that proceeding. The Court rejected this contention, noting that the Commission had a statutory duty to decide the issue at hand in light of the proper standards and that this duty remained

17

"regardless of whether those standards previously had been spelled out in a general rule or regulation." *Id.* at 201. The Court concluded that "the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." *Id.*, at 203. Even accepting the premise that *Specialty Healthcare* announced a new standard, the contention that the Board violated the APA is therefore unavailing.

### 5. *Presumptively Appropriate Units*

In early cases dealing with the retail industry, the Board stated that a storewide unit was "basically appropriate," *I. Magnin*, 119 NLRB at 643, or was "the optimum unit," *May Department Stores*, 97 NLRB 1007, 1008 (1952). But even in the cases announcing that "presumption," the Board recognized that smaller units can be appropriate. *See Allied Store of New York, Inc.*, 150 NLRB 799, 803 (1965). This is consistent with the policies underlying the Board's general approach to unit determination: recognition that a unit is presumptively appropriate does not lead to a requirement that *only* that unit can be appropriate. As the Board explained in *Specialty Healthcare*:

> the suggestion that there is only one set of appropriate units in an industry runs counter to the statutory language and the main corpus of our unit jurisprudence, which holds that the Board need find only that the proposed unit is an appropriate unit, rather than the most appropriate unit, and that there may be multiple sets of appropriate units in any workplace.

357 NLRB No. 83, at *10. Thus, even if a store-wide unit were presumptively appropriate in the retail industry—a contention to which the Board strenuously objects, *Macy's & Local 1445*, 371 NLRB No. 4, *17-22—the application of *Specialty Healthcare* to the retail context would not mark a deviation from Board precedent.

No. 15-60022

\*

The standard articulated by the Board in *Specialty Healthcare* does not violate the NLRA. The Board did not depart from a uniform rule by applying it, and its basis and application were cogently explained. The standard was not improperly imported from another context, and it was not adopted in violation of the APA. Finally, the application of the standard in the retail context is not inconsistent with prior Board decisions. We therefore decline to reject the *Specialty Healthcare* standard and hold that the Board did not abuse its discretion by articulating and applying this standard in the instant case.

C.

Finally, Macy's argues that, even under *Specialty Healthcare*, the Board approved an inappropriate unit because it carried its burden of showing that all selling employees within the store share an overwhelming community of interest. However, as explained in Part III.A, *supra*, the Board's factual findings illustrate numerous distinctions between the cosmetics and fragrances employees and the other selling employees, such that it cannot be said that there is "no legitimate basis upon which to exclude [those] employees" from the unit. *Specialty Healthcare*, 357 NLRB No. 83, at \*15. We therefore hold that the Board did not abuse its discretion when it determined that the other selling employees do not share an overwhelming a community of interest with the petitioned-for employees.

IV.

The Board reasonably concluded the unit of cosmetics and fragrances employees at the Saugus store was appropriate. Macy's has failed to establish that the unit is clearly not appropriate and has failed to demonstrate that the Board abused its discretion by articulating and applying the overwhelming community of interest test. The Board's cross-application for enforcement is therefore GRANTED and Macy's petition for review is DENIED.

19