# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60669

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2016

Lyle W. Cayce
Clerk

NATIONAL LABOR RELATIONS BOARD,

> Petitioner,

v.

VCNCL, L.L.C., doing business as Vineyard Court Nursing and
Rehabilitation Center,

> Respondent.

Application for Enforcement of an Order of the
National Labor Relations Board
NLRB No. 15-CA-144945

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PER CURIAM:*

The National Labor Relations Board (the Board) seeks enforcement of its order requiring Vineyard Court Nursing and Rehabilitation Center (the Center) to bargain with the Retail, Wholesale and Department Store Union, AFL-CIO (the Union), which the Board certified as the bargaining representative of a unit of the Center's employees. The Center challenges the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60669

Board's order, arguing that the Regional Director's bargaining unit determination was improper, and that bad faith on the part of the Board impermissibly tainted the subsequent union representation election. We enforce the Board's order.

**I**

A group of Center employees filed an election petition seeking to represent a unit of employees for collective bargaining purposes. The proposed unit included all dietary employees, laundry employees, housekeeping employees, and Certified Nursing Assistants (CNAs) but excluded Licensed Practical Nurses (LPNs), Registered Nurses (RNs), professional and technical employees, office and clerical associates, and guards and supervisors as defined in the National Labor Relations Act (the NLRA). The Center challenged the petition on the ground that the unit should include LPNs, RNs, maintenance employees, activity employees, the social services director, the business office manager, and some specialty nurses.

The Board's Regional Director concluded that the petitioned-for unit was not an appropriate one, on the ground that it was "not an identifiable group separate from other employees" and that "most, if not all, of the employees at the facility have [certain] terms and conditions of employment in common" with those in the proposed unit. The Regional Director accordingly required that the unit also include the activity employees, the social services director, and the maintenance employees, such that the unit would constitute a "service and maintenance unit."[1] The approved unit did not include LPNs, RNs, and

---

[1] The Regional Director initially allowed these employees to "vote subject to challenge," but in a subsequent order the unit designation was amended simply to allow those employees to vote as members of the unit.

2

the business office manager; the Regional Director stated that the LPNs and RNs "do not share an overwhelming community of interest with the CNAs."

In explaining why CNAs belong in the unit but LPNs do not, the Regional Director noted that LPNs are "technical employees"; that "LPNs and CNAs do not perform the same duties despite the fact that they occasionally assist each other"; that "the CNAs regard the LPNs as their supervisors even if they are not supervisors as defined by the Act"; and that RNs and LPNs discourage CNAs from working out of the nurse's station (where RNs and LPNs work), even though official policy is that CNAs do so. She concluded that "[g]iven the differences in their work, and the manner in which they view each other," CNAs and LPNs do not share an "overwhelming community of interest with a service and maintenance unit." The Center petitioned for review, and the Board affirmed the decision.

During the unit representation hearing, the Center's counsel, Norman Mott, stated in the presence of the union representative that he was "not . . . real happy" and felt "irritation" about the fact that some employees had not provided advance notice to the Center that they had been subpoenaed and consequently would be unable to work. He further stated: "I'm not sure this is [8(g)] protected, either."[2]  In response, the Union filed an unfair-labor-practice charge against the Center a few hours after the hearing, alleging that Mott had threatened employees with retaliatory action in connection with their testimony. The Board investigated and issued its own complaint two months later alleging that the Center had interfered with, restrained, or coerced

---

[2] *See* 29 U.S.C. § 158(g) ("A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention . . . . The notice shall state the date and time that such action will commence.").

No. 15-60669

employees in violation of 29 U.S.C. § 158(a)(1).  The complaint was settled without further litigation.

After the Board conducted a secret-ballot election among the directed unit of employees, which the Union won 25-18, the Center filed an objection to the conduct of the election on multiple grounds, including that the "meritless unfair labor practice charge" had "interfered with and destroyed the requisite laboratory conditions under which a representation election should be conducted."  The Regional Director overruled all objections.  The Board agreed and accordingly certified the Union as the bargaining representative of the proposed unit of employees.

The Center refused to recognize and bargain with the Union.  The Union filed an unfair-labor-practice charge in response, and the Board's General Counsel issued a complaint alleging that the Center had violated §§ 8(a)(1) and (5) of the NLRA by failing to bargain.  The Board granted the General Counsel summary judgment on its claims, stating that the "representation issues raised by [the Center] were or could have been litigated in the prior representation proceeding."  The Board accordingly required the Center to bargain with the Union upon request.  The Center appeals that order on the grounds that the unit determination was inappropriate and that the Union's complaint about counsel's remark compromised the integrity of the representation election.

**II**

"[S]election of an appropriate bargaining unit lies largely within the discretion of the Board, whose decision, 'if not final, is rarely to be disturbed.'"[3] "This court's review of the Board's determination of an appropriate bargaining

---

[3] *S. Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'rs*, 425 U.S. 800, 805 (1976) (per curiam) (quoting *Packard Motor Co. v. NLRB*, 330 U.S. 485, 491 (1947)).

unit . . . is 'limited to determining whether the decision is arbitrary, capricious, an abuse of discretion, or lacking in evidentiary support.'"[4]

"In deciding whether a group of employees is an appropriate bargaining unit, this court has adopted the 'community of interests' analysis. Factors used to determine a 'community of interests' include 'bargaining history, operational integration, geographic proximity, common supervisor, similarity in job function, and employee interchange.' In assessing the employees' community of interests, '[t]he Board must consider the entire factual situation, and its discretion is not limited by a requirement that its judgment be supported by all, or even most, of the potentially relevant factors.'"[5] "[E]mployees may seek to organize 'a unit' that is 'appropriate'—not necessarily *the* single most appropriate unit."[6] "A showing that some other unit would be appropriate is insufficient, for a choice among appropriate units is within the discretion of the Board."[7]

We recently explained at length in *Macy's, Inc. v. NLRB*[8] the considerations in reviewing the Board's determination that a bargaining unit is appropriate. We cited with approval the Board's decision in *Specialty Healthcare & Rehabilitation Center of Mobile,*[9] which "clarified the principles that apply in cases . . . where a party contends that the smallest appropriate bargaining unit must include additional employees beyond those in the petitioned-for unit."[10] We said in *Macy's*:

---

[4] *Elec. Data Sys. Corp. v. NLRB*, 938 F.2d 570, 572-73 (5th Cir. 1991) (quoting *NLRB v. J.C. Penney Co.*, 559 F.2d 373, 375 (5th Cir. 1977)).

[5] *Id.* at 573 (alteration in original) (citations omitted).

[6] *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610 (1991).

[7] *J.C. Penney Co.*, 559 F.2d at 375.

[8] No. 15-60022, 2016 WL 3124847, at *7-8 (5th Cir. June 2, 2016).

[9] 357 N.L.R.B. 934 (2011), *enforced sub nom. Kindred Nursing Ctrs. E., L.L.C. v. NLRB*, 727 F.3d 552 (6th Cir. 2013).

[10] *Macy's Inc.*, 2016 WL 3124847, at *4.

No. 15-60669

If the Board determines that the smaller unit is readily identifiable as a group—based on job classifications, departments, functions, work locations, skills, or similar factors—and the employees in the smaller unit share a community of interest according to the traditional criteria,

> the Board will find the petitioned-for unit to be an appropriate unit, despite a contention that employees in the unit could be placed in a larger unit which would also be appropriate or even more appropriate, unless the party so contending demonstrates that employees in the larger unit share an overwhelming community of interest with those in the petitioned-for unit.

*Specialty Healthcare*, 357 NLRB No. 83, at *17. Even before the Board decided *Specialty Healthcare*, the D.C. Circuit had approved an "overwhelming community of interest" standard, holding that "[i]f the employees in the proposed unit share a community of interest, then the unit is *prima facie* appropriate," and the employer bears the burden of showing that it is "truly inappropriate." *Blue Man Vegas, LLC v. NLRB*, 529 F.3d 417, 421 (D.C. Cir. 2008). As the court explained, this burden is satisfied where there "is no legitimate basis upon which to exclude certain employees from [the proposed unit]." *Id.*; *accord Specialty Healthcare*, 357 NLRB No. 83, at *16.[11]

The Center argues that the employees in the directed unit do not satisfy the threshold community-of-interest test, because the Regional Director "provided no rationale for excluding the LPNs from a service and maintenance unit," even though "LPNs and CNAs are the primary care givers to all of the

---

[11] *Id.* (alterations in original); *see also Kindred Nursing Ctrs.*, 727 F.3d at 565 ("[A]s long as the Board applies the overwhelming community of interest standard *only after* the proposed unit has been shown to be *prima facie* appropriate, the Board does not run afoul of the statutory injunction that the extent of the union's organization not be given controlling weight." (quoting *Specialty Healthcare*, 357 N.L.R.B. at 944 n.25)); *cf. NLRB v. Lundy Packing Co.*, 68 F.3d 1577, 1581 (4th Cir. 1995) (concluding that it would be improper for the Board to "presum[e] the union-proposed unit proper unless there is 'an overwhelming community of interest' with excluded employees," because by doing so "the Board effectively accord[s] controlling weight to the extent of union organization").

No. 15-60669

residents [and] [t]he LPNs share a far greater community of interest with the CNAs than do the dietary or housekeeping or laundry employees."

But the Regional Director initially only needed to find "*an* appropriate unit." The Regional Director reasoned that the proposed unit was not "an identifiable group separate from other employees" but could become one if all service and maintenance employees were added.[12] The Regional Director's conclusion that LPNs are "technical employees" was an indication that LPNs did not belong in such a unit, *unless* they shared an overwhelming community of interest with members of the unit such that its initial contours were unjustified.

Furthermore, the employees that the Director added to the proposed unit share a community of interest with proposed members in ways that LPNs do not. The Regional Director found that activity employees, who were added to the proposed unit, "coordinat[e] activities for the residents," which activities "are considered part of caring for the residents." The maintenance employees "are responsible for maintaining the facilities and equipment" and making repairs, and the social services director "is responsible for meeting the psychosocial needs of the residents" by conducting assessments and helping to develop plans of care. The Regional Director further found that none of these three categories of employee acts in a supervisory capacity. These duties are consistent with inclusion in a unit based on the provision of "service" to residents or the responsibility for "maintenance," and they stand in contrast to the finding that LPNs are "generally[] considered technical employees" whom

---

[12] *See Specialty Healthcare*, 357 N.L.R.B. at 938 ("[T]he Board [has] adopted a rule defining eight appropriate units in acute care hospitals and providing that all other units are inappropriate absent 'extraordinary circumstances.' The rule has generally been understood to place CNAs working in acute care hospitals in a unit including all nonprofessional service and maintenance employees." (citation omitted) (citing 29 C.F.R. § 103.30(a)(8))).

No. 15-60669

CNAs regard as their supervisors and whose primary responsibility is "patient care."

The Regional Director did not apply the overwhelming-community-of-interest standard as a "threshold determination" in place of the basic community of interest standard, as the Center suggests. LPNs have been excluded from service and maintenance units in past cases based on a lack of any community of interest, and those cases are not readily distinguishable from this one.[13] As the Regional Director explained, the directed unit comprised service and maintenance employees, and "it is not unusual for technical employees to be organized separately from service and maintenance employees if the Petitioner so desires."

Accordingly, the Board did not abuse its discretion in making its unit determination.

**III**

"The Board has wide discretion in the supervision of representation elections. Our review is limited to determining whether its decision was reasonable and supported by substantial evidence."[14] "'[T]he burden is on the party objecting to the conduct of the representation election to prove that there has been prejudice to the fairness of the election.' . . . [S]pecific evidence is required, showing not only that the unlawful acts occurred, but also that they

---

[13] *See, e.g.*, *Marian Manor for the Aged & Infirm, Inc.*, 333 N.L.R.B. 1084, 1094 (2001) (finding appropriate a service and maintenance unit in a nursing home that included CNAs but not LPNs); *Hillhaven Convalescent Ctr.*, 318 N.L.R.B. 1017, 1018 n.6 (1995) (classifying LPNs as "technical employees" and excluding them from a unit including CNAs, even though LPNs and CNAs shared some community-of-interest factors in common); *Pine Manor Nursing Home*, 238 N.L.R.B. 1654, 1656 (1978) (concluding that LPNs are "technical employees" who "share a community of interest separate from that shared by service and maintenance employees"); *see also Kindred Nursing Ctrs.*, 727 F.3d at 564-65 (permitting a CNA-only unit where unit passed a basic community-of-interest test and no other group, including LPNs, shared an overwhelming community of interest).

[14] *NLRB v. New Orleans Bus Travel, Inc.*, 883 F.2d 382, 384 (5th Cir. 1989) (citing *NLRB v. Rolligon Corp.*, 702 F.2d 589 (5th Cir. 1983)).

interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election."[15]  "In evaluating party conduct during the critical period, the Board applies an objective standard, under which conduct is found to be objectionable if it has 'the tendency to interfere with the employees' freedom of choice.'"[16]

"We will remand for a hearing when the objecting party raises substantial and material factual issues supported by a specific proffer of evidence which, if true, would be sufficient to set aside the election."[17]  Where "the Board resolved [an] issue at summary judgment without conducting a hearing, we must accept all allegations presented by [the objecting party's] evidence and [make] all reasonable inferences in a light most favorable to [the objecting party]."[18]

"A statement or prediction rises to the level of a threat if, under the totality of the circumstances, 'the employees could reasonably conclude that the employer is threatening economic reprisals if they support the Union.'"[19] The Center argues that the statement made by its counsel during the

---

[15] *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir. 1969) (citation omitted) (quoting *Sw. Portland Cement Co. v. NLRB*, 407 F.2d 131, 134 (5th Cir. 1969)).

[16] *Cedars-Sinai Med. Ctr.*, 342 N.L.R.B. 596, 597 (2004) (quoting *Cambridge Tool & Mfg. Co.*, 316 N.L.R.B. 716, 716 (1995)) ("In deciding whether such interference has occurred under this standard, the Board considers: (1) the number of incidents of misconduct; (2) the severity of the incidents and whether they were likely to cause fear among employees in the bargaining unit; (3) the number of employees in the bargaining unit subjected to the misconduct; (4) the proximity of the misconduct to the election date; (5) the degree of persistence of the misconduct in the minds of the bargaining unit employees; (6) the extent of dissemination of the misconduct among bargaining unit employees; (7) the effect, if any, of misconduct by the opposing party to cancel out the effects of the original misconduct; (8) the closeness of the final vote; (9) the degree to which the misconduct can be attributed to the party.").

[17] *NLRB v. McCarty Farms, Inc.*, 24 F.3d 725, 728 (5th Cir. 1994); *see also* 29 C.F.R. § 102.69(c)(1)(ii).

[18] *Trencor, Inc. v. NLRB*, 110 F.3d 268, 270 (5th Cir. 1997).

[19] *Tellepsen Pipeline Servs. Co. v. NLRB*, 320 F.3d 554, 562 (5th Cir. 2003) (quoting *TRW-United Greenfield Div. v. NLRB*, 637 F.2d 410, 418 (5th Cir. Feb. 1981)).

representation hearing, about which the Union complained, could not have constituted an improper threat because it was protected "petitioning speech." But the precedent on which the Center relies for that proposition only establishes that a well-founded lawsuit may not be enjoined as an unfair labor practice.[20] The Center did not file a lawsuit or take legal action of any kind in relation to any supposed violation of § 8(g)—counsel merely speculated about the issue—and in any case, petitioning speech is only protected if it is not "baseless."[21] As the Supreme Court has stated in a related context:

> If there is any implication that an employer may or may not take action solely on his own initiative for reasons unrelated to economic necessities and known only to him, the statement is no longer a reasonable prediction based on available facts but a threat of retaliation based on misrepresentation and coercion, and as such without the protection of the First Amendment.[22]

Threats of legal action, if spurious or otherwise inappropriate, thus may constitute unfair labor practices: the question is not whether the employer could conceivably act pursuant to its statement in a lawful manner, but rather whether "the intended and understood import of th[e] message"[23] is such that the employee might be led to believe that the employer intends to pursue a retaliatory end by any means.[24] Moreover, the fact that counsel made

---

[20] *See Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743 (1983) ("Although it is not unlawful under the [NLRA] to prosecute a meritorious action, the same is not true of suits based on insubstantial claims—suits that lack, to use the term coined by the Board, a 'reasonable basis.' Such suits are not within the scope of First Amendment protection.").

[21] *Id.*

[22] *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969).

[23] *Id.* at 619.

[24] *See, e.g., Iowa Beef Processors, Inc. v. NLRB*, 567 F.2d 791, 796 (8th Cir. 1977) (considering statements made at an unfair labor practices hearing by employer's counsel suggesting that employee-witnesses could be criminally liable if their testimony at that hearing revealed that they had been involved in a criminal incident) ("Notwithstanding that such statements may have been technically correct, we are persuaded that, in violation of section 8(a)(1) of the [NLRA], they intimidated prospective employee-witnesses in the exercise of their section 7 rights, which include the right to invoke the board's processes and to testify at its proceedings.").

reference to a provision of law does not mean that he was merely describing the Center's legal rights.  He also was necessarily implying that the result of any redress could be adverse to the employees, because an employee who violates § 8(g) loses various protections against what would otherwise constitute employer misconduct under the NLRA.[25]  Because counsel's remark simultaneously communicated personal displeasure and warned of possible adverse consequences to employees, and because it is far from clear that counsel was correct or even reasonable to intimate that the behavior of the testifying employees might have warranted such consequences, it was not unlawful for the Union to complain that the remark constituted intimidation. No evidence has been proffered to suggest that the Board's investigation and complaint tended to interfere with employee free choice, and accordingly we need not remand for a hearing.  The Board did not abuse its discretion in overruling the Center's objection.

\* \* \*

For the foregoing reasons, we ENFORCE the Board's order.

---

[25] *See* 29 U.S.C. § 158(d) (stating that an employee who violates § 8(g) "shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 158, 159, and 160"); *see also TRW-United*, 637 F.2d at 418 ("It is well settled that employer threats of plant closure, job loss, and loss of promotion in the event of unionization or support for a union are violative of § 8(a)(1) of the [NLRA].  Section 8(a)(1) is violated if, under the totality of the circumstances, 'the employees could reasonably conclude that the employer is threatening economic reprisals if they support the Union.'" (citations omitted) (quoting *Hendrix Mfg. Co. v. NLRB*, 321 F.2d 100, 105 (5th Cir. 1963))).