AMALGAMATED CLOTHING WORKERS OF AMERICA, EL PASO DISTRICT JOINT BOARD, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

FARAH MANUFACTURING COMPANY, INC., Respondent.

Nos. 73–2092, 73–2600.

United States Court of Appeals, Fifth Circuit.

March 21, 1974.

**596**

Arthur M. Goldberg, Gen. Counsel, Washington, D. C., Joel Ronald Ax, New York City, for Amalgamated Clothing Workers.

Elliott Moore, Deputy Associate Gen. Counsel, Michael S. Wolly, N. L. R. B., Washington, D. C., Milo Price, Regional Director, Woodrow Greene, Albuquerque, N. M., for N. L. R. B.

Tommy B. Duke, Lincoln, Neb., Kenneth R. Carr, El Paso, Tex., Cecil R. Hedger, Lincoln, Neb., for Farah Mfg. Co.

Before BELL, THORNBERRY and DYER, Circuit Judges.

DYER, Circuit Judge:

The principal issue presented in these consolidated appeals is whether the Board's determination of a bargaining unit of certain employees at Farah Manufacturing Company's Gateway plant in El Paso, Texas, is a reasonable exercise of the Board's discretion. After a careful review of the record, we conclude that the Board's decision is not adequately supported by the evidence and therefore deny enforcement of its order finding Farah in violation of sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 159, by refusing to bargain with the Union.

The present controversy arose out of organizational efforts by the El Paso Joint Board, Amalgamated Clothing Workers of America, AFL–CIO at Farah's Gateway plant, where the Employer is engaged in manufacturing men's and boys' trousers. The Gateway plant consists of three large sections or "phases," all of which are located under one roof. Under the physical arrangement at the plant, Phases I and II are separated by a 20-foot corridor, while Phases II and III are separated only by a common wall. Approximately 3000 employees are employed at the Gateway facility. Of this total, approximately 260 employees in Phase III were determined by the Board to constitute an appropriate bargaining unit under section 9(b) of the NLRA. These employees were described by the Board as "cutters, markers and spreaders" engaged in the cloth cutting operations in Phase III, where cutting of cloth into parts is done for the various Farah plants. Excluded from the unit, however, were other employees working in Phase III, such as receiving, storage and maintenance employees.

The evidence adduced before the Board demonstrated that the cutters, markers and spreaders were not physically separated from other workers assigned to Phase III, although it appeared that little interchange occurred with employees working in the other two Phases. Further, no separate supervision was exercised over these employees, inasmuch as the supervisor over cutters, markers and spreaders also supervised truck drivers, receiving and storage employees, and miscellaneous other employees working in Phase III. The evidence also showed that all Gateway employees are subject to centrally determined and uniformly administered personnel policies and that wage and fringe benefit programs are uniform for all hourly employees including cutters, markers and spreaders. Farah imposed no requirements of prior training or work experience for any position at the plant, and no evidence was adduced as to any sort of training program utilized by

Farah to equip any employees with special skills or expertise.

On the basis of this evidence, the Board determined that "cutters, markers and spreaders" in Phase III were "highly skilled" employees with interests "separate and apart" from other Gateway employees, and thus constituted an appropriate intra-plant bargaining unit. The Board based its finding that these employees were highly skilled on the fact that cloth cutting operations at the plant involved working with a variety of fabrics and clothing styles. By virtue of continual fashion changes, the Board found that "a more complicated and skillful operation is essential" on the part of these employees. These findings were made over the strenuous objections of the Company that only a larger, plant-wide unit would be appropriate.

■ Pursuant to the unit determination, a Board-supervised election was conducted, and the successful Union was thereafter certified as the unit employees' exclusive representative. The Union's subsequent request to begin bargaining was refused by the Company, whereupon the Union filed unfair labor practice charges alleging violations of sections 8(a)(5) and (1). In May 1973, the Board found the Employer in violation of the Act since the Union had been properly certified and since the underlying unit determination was appropriate. Accordingly, the Board ordered the Company to bargain with the Union upon request, but denied the Union's prayer for a "make whole" remedy[1] as inappropriate under the circumstances.

## BARGAINING UNIT DETERMINATION

■ We begin our inquiry fully aware that a bargaining unit designation by the Board is not lightly to be overturned, since such determinations necessarily involve a large measure of informed discretion. Nevertheless, it was manifestly not the congressional intent that appellate scrutiny of Board decisions be relegated to a formalistic ritual of stamping an appellate imprimatur on administrative determinations without having undertaken a careful examination of the basis of the Board's action. To the contrary, courts are called upon in effectuating congressional policy to review carefully the record in each case to determine whether the Board's decision is a rational one supported by the evidence, lest the judiciary improvidently sanction arbitrary and capricious determinations. See N. L. R. B. v. Krieger-Ragsdale & Co., 7 Cir. 1967, 379 F. 2d 517. This appellate function, albeit limited, translates into a duty by the Board in such proceedings to articulate "substantial reasons" for its unit determinations. N. L. R. B. v. Pinkerton's, Inc., 6 Cir. 1970, 428 F.2d 479.

■ Our review of the Board's order in this case centers on whether these cutters, markers and spreaders can reasonably be viewed as sharing a community of interests which distinguish them from their co-employees at Gateway. For it is the characteristic of separate interests, distinct from those of co-employees, which renders appropriate the Board's determination of an intra-plant bargaining unit.[2] Thus, in May De-

---

1. The "make whole" remedy, entailing an award of litigation costs and organization expenses, is a drastic remedial device appropriate only in circumstances where the Company's refusal to bargain is palpably frivolous in nature, and designed merely to delay the inevitable results of the Union's election victory. Since we conclude that the bargaining unit determination was inappropriate in this case, the Union's petition for review of the Board's order refusing this unusual remedy must necessarily be denied.

2. Section 9(b) authorizes the designation of a "craft unit," as well as an intra-plant bargaining unit, but the instant case does not involve a purported unit of skilled craftsmen. No evidence was adduced to support such a determination, and the Board's own decision in Newburgh Mfg. Co., Inc., 1965, 151 N.L. R.B. 763, implicitly recognizes that not all employees engaged in cloth cutting are highly skilled craftsmen. Indeed, in prior cutter cases before the Board, ample evidence indicated that cutters employed either by the re

partment Stores Co. v. N. L. R. B., 1945, 326 U.S. 376, 380, 66 S.Ct. 203, 207, 90 L.Ed. 145, the Supreme Court upheld the Board's intra-enterprise unit determination "since [the] employees had a degree of self-organization and a special trade which *sufficiently differentiated* them from other employees" in the store. (Emphasis supplied). Clearly, the evil to be avoided in intra-plant unit designations is the arbitrary grouping of employees whose interests are indistinguishable from those of their fellow employees, since establishing such artificial entities could impede rather than enhance the collective bargaining process. Accordingly, this Court recently upheld the Board's determination of a bargaining unit comprised solely of X-ray technicians out of a larger group of skilled technician-employees since "enough factors [were] present here to *sufficiently distinguish* the X-ray technicians from other departments as a separate unit, appropriate for bargaining purposes." Ochsner Clinic v. N. L. R. B., 5 Cir. 1973, 474 F.2d 203, 209 (emphasis supplied).[3]

▮ Shared interests which distinguish a homogeneous employee group from other employees will typically relate, as was the case in *Ochsner Clinic*, to such basic subjects of collective bargaining as wages, hours and working conditions. However, in our judgment the complete lack of separate interests in any conditions of employment so as to distinguish these cutters, markers and spreaders from the other employees at the Gateway plant renders the Board's

unit determination in this case arbitrary and capricious. The facts unmistakably demonstrate that Company policies governing wages, hours and working conditions applicable to the employees in the designated unit prevail throughout the plant and, indeed, are centrally determined. The unit employees are in no way separated physically from numerous other employees working in Phase III, nor has the Company established separate and exclusive supervision over these workers. Moreover, there is no separate organization of these employees into any sort of departmental unit. No special qualifications or prior training are required by the Company for employees engaged in cutting operations. In sum, no distinguishing characteristics displayed by the unit members as compared with other employees are urged by the Board other than the fact that the Board deems these employees "highly skilled." This conclusory statement, unsupported by evidence in the record as to why these employees' duties necessitate substantial skills, cannot be viewed as constituting substantial evidence to support the reasonableness of the Board's decision.

The basis for the unit determination in this case appears even more tenuous upon examining prior cutter-unit decisions relied upon by the Board. In each of these cases, certain characteristics which set cutting employees apart from their co-workers were clearly evident. Thus, in Rothschild-Kaufman Co., Inc., 1952, 98 N.L.R.B. 353 and Benjamin & Johnes, Inc., 1961, 133 N.L.R.B. 768,

---

spective enterprises or by other employers in the same geographical area typically completed a lengthy training program in order to perform these tasks. Rothschild-Kaufman Co., Inc., d/b/a Taylored Slacks of Hollywood, 1952, 98 N.L.R.B. 353; Sir. James, Inc., 1952, 97 N.L.R.B. 1572. No such evidence was elicited in the present case. Moreover, the Board in this case has emphasized that these "skilled" workers enjoy a community of interest "separate and apart" from other employees at Gateway, thus indicating that this unit is comprised of a homogeneous group of employees within the larger plant, appropriate as an intra-plant unit.

3. *See* N.L.R.B. v. St. Louis Printing Pressmen and Assistants Union No. 6, Inc., 8 Cir. 1967, 385 F.2d 956. As then Judge Blackmun stated in that case, the touchstone of appropriate unit determinations is whether the unit's members have a "recognizable community of interest sufficiently distinct from others." *Id.* at 962. *See also* Retail, Wholesale & Department Store Union v. N.L.R.B., 1967, 128 U.S.App.D.C. 41, 385 F.2d 301, 305; Uyeda v. Brooks, 6 Cir. 1966, 365 F.2d 326, 329.

cutters were compensated at a different level or on a different basis than employees engaged in other functions. In Newburgh Mfg. Co., Inc., 1965, 151 N. L.R.B. 763, the cutting operations employees were organized into a separate department, were physically segregated from the rest of the plant, and were placed under separate supervision. In addition, the employees shared in a departmental bonus based solely upon their own productivity. Such indicia of separateness, evident in each of the decisions relied on by the Board, are wholly absent in the instant case.[4]

The Board's application for enforcement is denied. The Union's petition for review is also denied.

---

4. Two other cases involving cutting departments in garment factories are similarly unhelpful to the Board's position. In Sir James, Inc., 1952, 97 N.L.R.B. 1572, the cutters received higher pay than other employees and worked under separate supervision. In N.L. R.B. v. Lettie Lee, Inc., 9 Cir. 1944, 140 F. 2d 243, the court in upholding the Board's unit determination found that the cutters constituted a specialized craft unit. The court's finding in that case seems particularly appropriate since the union seeking certification was comprised exclusively of "qualified cutters." Indeed, other employees at the plant were ineligible for union membership. In the present case, however, the Board's proposed unit consists of markers and spreaders in addition to cutters, and the union seeking certification is not a specialized craft union admitting only qualified cutters.